655 So.2d 500 (1995)
STATE of Louisiana
v.
Oliver MAIZE.
No. 94 KA 0736.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
Rehearing Denied June 21, 1995.
*504 John R. Walker and Dianne S. Fluitt, Houma, for State of Louisiana.
Joseph Neves Marcal, III, New Orleans, for defendant-appellant.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
SHORTESS, Judge.
Oliver Maize (defendant) was originally charged by grand jury indictment with first degree murder, LSA-R.S. 14:30. Subsequently, the charge was amended to second *505 degree murder, LSA-R.S. 14:30.1.[1] He pled not guilty and, after trial by jury, was found guilty as charged. Defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.[2] He has appealed, alleging nineteen assignments of error. Assignments of error numbers 6, 7, 8, 11, and 12 were not briefed on appeal and, therefore, are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4. The relevant assignments of error are as follows:
1. The trial court erred in denying defendant's motion to suppress.
2. The trial court erred in ruling that defense counsel's investigator was subject to the rule of sequestration.
3. The trial court erred in denying two defense challenges for cause.
4. The trial court erred in denying defendant's Batson objection to the State's use of peremptory challenges.
5. The trial court erred in sustaining an objection by the prosecutor during defense counsel's questioning of Detective Randy Pijor.
9. The trial court erred in restricting defense counsel's cross-examination of D.L. Mosely regarding the disappearance of his notebook.
10. The trial court erred in restricting defense counsel's cross-examination of Clyde McGuire.
13. The trial court erred in limiting the scope of defense counsel's recross-examination of Ronald Williams.
14. The trial court erred in limiting defense counsel's cross-examination of Joseph Howard regarding his reluctance to speak with defense counsel and in sustaining the prosecutor's objection when defense counsel was trying to develop evidence of prosecutorial misconduct.
15. The trial court erred in limiting defense counsel's cross-examination of Joseph Howard regarding his "characterization of the name of the victim."
16. The trial court erred in overruling defense counsel's objection and allowing the prosecutor to elicit a demonstration from defendant.
17. The trial court erred in refusing to give an appropriate instruction to the jury regarding reasonable doubt.
18. The trial court erred in denying defendant's motion for post-verdict judgment of acquittal.
19. The trial court erred in denying defendant's motion for new trial.

FACTS
During the early morning hours of July 21, 1984, in Terrebonne Parish near Houma, Louisiana, defendant and four other young males, Ronald L. Williams, Joseph Howard, *506 Clyde McGuire, and Delbert Stewart, were out riding around in defendant's car. When they spotted the victim, Dale Sanner, a thirty-nine-year-old male who was hitchhiking on the side of the road, defendant stopped and offered the victim a ride. The victim was obviously intoxicated, and he asked for a ride home. Instead, defendant drove to Bull Run Road in Houma, told the victim to get out of the car, and shot him in the face while attempting to rob him. Defendant then fled the scene and threatened his passengers to keep quiet about the incident. The victim's body was discovered a short time later.
This murder remained unsolved until December 1988. At that time, Williams approached the authorities with information about it. Williams indicated his girlfriend was in jail and he hoped to secure her release in exchange for giving information about the murder. He gave a taped statement in which he identified defendant as the perpetrator. Shortly thereafter, defendant was arrested.

ASSIGNMENT OF ERROR NO. ONE:
Defendant contends the trial court erred in denying his motion to suppress two oral inculpatory statements made to D.L. Mosely, an investigator for the Terrebonne Parish District Attorney's Office. These statements were made after his arrest, but prior to his tape-recorded statement. The hearing on the motion to suppress concerned defendant's two oral inculpatory statements and his tape-recorded statement. However, on appeal, defendant addresses only the two oral inculpatory statements to Mosely. Defendant does not contest the circumstances of his arrest, or deny that both statements were made after being advised of his Miranda rights. Instead, defendant alleges both police and prosecutorial misconduct. Specifically, defendant contends Mosely was lying because he never made any such oral inculpatory statements to Mosely. Defendant further suggests that, upon realizing the taped statement was insufficient evidence to support a conviction, the authorities decided they needed further evidence against him and, therefore, Mosely simply fabricated the two oral inculpatory statements. The issue presented is whether the trial court erred in its determination that Mosely's testimony regarding the two oral inculpatory statements was credible.
It is well settled that for a confession or inculpatory statement to be admissible into evidence, the State must affirmatively show it was freely and voluntarily given without influence of fear, duress, intimidation, menace, threats, inducements, or promises. LSA-R.S. 15:451. The State must specifically rebut a defendant's specific allegations of police misconduct in eliciting a confession. State v. Thomas, 461 So.2d 1253, 1256 (La. App. 1st Cir.1984), writ denied, 464 So.2d 1375 (La.1985). Additionally, the State must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. King, 563 So.2d 449, 453 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. See State v. Patterson, 572 So.2d 1144, 1150 (La.App. 1st Cir.1990), writ denied, 577 So.2d 11 (La.1991); State v. Sanford, 569 So.2d 147, 150 (La.App. 1st Cir.1990). Whether a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case. State v. Benoit, 440 So.2d 129, 131 (La.1983). The trial court must consider the totality of the circumstances in deciding whether a confession is admissible. State v. Hernandez, 432 So.2d 350, 352 (La.App. 1st Cir.1983).
For the reasons which follow, we find the trial court's ruling was correct. Only the State presented evidence at the motion to suppress hearing on the issue of the voluntariness of defendant's oral and taped statements. The testimony of the State's witnesses established that defendant gave two oral inculpatory statements and one tape-recorded statement after first being advised of his Miranda rights. The two oral inculpatory statements to Mosely occurred after defendant's arrest, but prior to the *507 tape-recorded statement. In the first oral statement, defendant indicated he did not mean to kill the victim. In the second oral statement, defendant again indicated he did not mean to kill the victim, and he elaborated that he only used the gun to scare the victim. While Mosely was the only witness to defendant's two oral inculpatory statements, Detectives Gary Williams and Calvin Jackson of the Terrebonne Parish Sheriff's Office both testified Mosely informed them that defendant had indicated he did not mean to kill the victim. At the conclusion of this hearing, the trial court ruled the statements were freely and voluntarily given after a waiver of Miranda rights. The trial court further stated it found no evidence of police misconduct in obtaining the statements and, therefore, they were admissible at the trial. In so ruling, the court obviously determined the State's witnesses were credible. After considering the entire record,[3] we agree with the trial court's determination that Mosely's testimony regarding defendant's two oral inculpatory statements was credible, and, therefore, these statements were properly admitted at the trial.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER TWO:
Defendant contends the trial court erred in refusing to exempt his investigator, Sam Reine, from the sequestration order.
The purpose of sequestration is to assure that a witness will testify as to his own knowledge of the events, to prevent the testimony of one witness from influencing the testimony of others, and to strengthen the role of cross-examination in developing facts. State v. Revere, 572 So.2d 117, 125 (La.App. 1st Cir.1990), writ denied, 581 So.2d 703 (La.1991). The resolution of sequestration problems is within the sound discretion of the trial court. State v. Ondek, 584 So.2d 282, 298 (La.App. 1st Cir.), writ denied, 586 So.2d 539 (La.1991). On appeal, the reviewing court will look at the facts of each case to determine whether a sequestration violation resulted in prejudice to the accused. State v. Lopez, 562 So.2d 1064, 1066 (La.App. 1st Cir.1990).
Louisiana Code of Evidence article 615(A) provides, in pertinent part:
On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion. However, this Article does not authorize exclusion of:
. . . .
(3) A person whose presence is shown by a party to be essential to the presentation of his cause such as an expert; ...
In his brief to this court, defense counsel states that because of the trial court's ruling, defendant "had to sacrifice one of his important witnesses." He further states: "Ordinarily this would have been cumulative testimony, but in view of the relationship between defense witness Rose Brown and defendant, it was necessary to buttress her credibility before the jury."
Defendant cites neither statutory law nor jurisprudence which would exempt a fact witness from sequestration simply because he was a defense investigator. Mr. Reine was not an expert witness. Instead, he was a fact witness and, as such, was subject to sequestration. Accordingly, we find no error in the trial court's ruling that Reine was subject to the sequestration order.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER THREE:
Defendant contends the trial court erred in denying his challenges for cause of prospective jurors Christopher Reding and David Pitre. He contends these two men did not *508 understand the law on reasonable doubt and, therefore, were "unwilling to follow the law."
Initially, we note that the record shows defendant did not exhaust his peremptory challenges. Nevertheless, he was not precluded from complaining of the trial court rulings refusing to sustain his challenges for cause. See State v. Burge, 498 So.2d 196, 203 (La.App. 1st Cir.1986) (wherein we noted that Act 181, § 1, of 1983 amended Louisiana Code of Criminal Procedure article 800 to remove the requirement that a defendant exhaust all his peremptory challenges before he can complain of a ruling denying a challenge for cause).
Code of Criminal Procedure article 797 provides, in pertinent part, as follows:
The state or the defendant may challenge a juror for cause on the ground that:
. . . .
(4) The juror will not accept the law as given to him by the court; ...
In brief, defendant states the trial court never attempted to rehabilitate these two prospective jurors once he made the challenges for cause. He argues that the court's refusal to grant his challenges for cause of these prospective jurors constituted reversible error. However, we find no error in the trial court's rulings denying defendant's challenges for cause of prospective jurors Reding and Pitre. Defendant ignores the fact that the trial court did repeat its explanation of the reasonable doubt standard after some of the prospective jurors expressed confusion on that point. The record reflects that one juror continued to have a problem with the reasonable doubt issue and was excused for cause. However, no one in the remaining panel persisted in his/her questions, including Reding and Pitre, after the court's further explanation, and then all responded affirmatively when the court asked:
Do all of you feel that once all the evidence has been introduced and the Court gives you the standards to apply, [you can] accept the standards that the Court gives you to apply to the evidence in this case, even on the issue of reasonable doubt?
This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. FOUR
Defendant contends the trial court erred in denying his Batson objection to the State's use of peremptory challenges.
A peremptory challenge by the State may not be based solely upon the race of the juror. LSA-C. Cr. P. art. 795(C). In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that an equal protection violation occurs when the prosecutor, in the trial of a member of a cognizable racial group, exercises peremptory challenges to remove members of the defendant's race from the jury venire for a discriminatory purpose. In Batson, the Supreme Court also set standards for assessing a prima facie case of purposeful discrimination and placed the burden on the prosecution, after such a prima facie showing, to come forth with a neutral explanation for challenging black jurors that related to the particular case. See State v. Collier, 553 So.2d 815, 817 (La.1989).
In Batson, the United States Supreme Court held a defendant may establish a prima facie case of discriminatory selection of the petit jury solely on evidence concerning the State's use of its peremptory challenges at the defendant's trial. In regard to the establishment of such a prima facie case, the Supreme Court stated the following:
To establish such a case, the defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the *509 empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
476 U.S. at 96, 106 S.Ct. at 1723 (citations omitted).
In Powers v. Ohio, 499 U.S. 400, 409-14, 111 S.Ct. 1364, 1370-1373, 113 L.Ed.2d 411 (1991), a case involving a white defendant, the United States Supreme Court held the Equal Protection Clause prohibits a prosecutor from using peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, "a practice that forecloses a significant opportunity to participate in civic life." The Supreme Court further held that, while an individual juror does not have the right to sit on a particular petit jury, the juror possesses the right not to be excluded from serving on one on account of race; and the Supreme Court concluded that any defendant, regardless of his race, may raise the third-party equal protection claims of jurors excluded by the prosecution because of their race. Consequently, the holding in Powers v. Ohio alleviates the initial showing required under Batson for establishment of a prima facie case of purposeful discrimination, i.e., that the defendant was a member of a cognizable racial group and that the prosecutor had exercised peremptory challenges to remove venire members of the defendant's race. State v. Lamark, 584 So.2d 686, 695 n. 5 (La.App. 1st Cir.), writ denied, 586 So.2d 566 (La.1991). However, in all other respects, the defendant still must make a prima facie showing of discriminatory selection as required by Batson.
The trial judge must determine whether the defendant has established the requisite prima facie case of discriminatory selection. In making this determination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against black jurors and any questions or statements by the prosecutor during voir dire examination or in exercising his challenges which may support or refute an inference of purposeful discrimination. Batson, 476 U.S. at 96-97, 106 S.Ct. at 1722-1723; State v. Collier, 553 So.2d at 819.
Batson places the burden on the prosecution, after a prima facie showing of purposeful discrimination has been made, to come forward with a neutral explanation for challenging black jurors that is related to the particular case. State v. Collier, 553 So.2d at 817. Because a trial judge's findings pertaining to purposeful discrimination turn largely on credibility evaluations, such findings ordinarily should be entitled to great deference by a reviewing court. Batson, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21.
Each of the three voir dire panels consisted of fourteen prospective jurors. The prosecutor exercised a total of eight peremptory challenges, three during the first panel, three during the second panel, and two during the third panel. Defendant contends the prosecutor used six peremptory challenges against blacks and one against a Native American Indian. Initially, we note the record does not reflect the race of most of the prospective jurors and, therefore, a complete review of this assignment of error is impossible. Although defendant has attached an appendix to his brief listing the race, sex, and age of all forty-two prospective jurors, this court has no authority to receive or review evidence not contained in the trial court record. State v. Swan, 544 So.2d 1204, 1209 (La.App. 1st Cir.1989).
No Batson-related comments were made during or after the voir dire examination of the first panel. The prosecutor began giving race neutral reasons for his exercise of peremptory challenges during the second panel. However, defense counsel never made a formal Batson objection on the record until the completion of voir dire examination of the second panel.[4] Defense counsel's comments specifically questioned the prosecutor's peremptory challenges of two black males from the first panel, Phillip Welch and Bernard *510 Coleman. After hearing defense counsel's and the State's reasons, the trial court noted for the record:
The Court's going to also note that, for the record, that the Court has not observed any pattern developing by the State in reference to excluding any particular group of people from this jury. As a matter of fact there've been several of them that the State has accepted that have been either challenged for cause or other grounds were omitted by the Court or by the defense.
In the second and third panel voir dires, the prosecutor gave sufficient race neutral reasons for four of the five peremptory challenges which he exercised. The prosecutor peremptorily challenged three prospective jurors during the second panel, Keri Joseph, Samantha Hayes, and Ethel Dardar. Joseph and Hayes were black, and Dardar was a Native American Indian. The prosecutor indicated he challenged Joseph because she was a medical assistant student at Coastal College and she was not permitted to miss more than ten hours of school. He challenged Hayes because she had a felony arrest and she knew several witnesses in the case. The prosecutor indicated he challenged Dardar because he was currently prosecuting her husband for a pending gill net violation.
During the third panel, the prosecutor exercised peremptory challenges against Jennifer Domangue and Reginald Cheavis. Apparently, Domangue was white. The prosecutor did not give any reason for exercising a peremptory challenge against her. Neither during voir dire examination nor in his brief to this court has defendant complained of this particular peremptory challenge. The prosecutor indicated he exercised a peremptory challenge against Cheavis because he knew defendant and numerous witnesses in the case, including D.L. Mosely, who was his cousin. Although defense counsel re-urged an objection at this point, the trial court overruled the objection. The court accepted the reasons expressed by the prosecutor for exercising a peremptory challenge against Cheavis and further noted it found no pattern of excluding prospective jurors on the basis of race and specifically stated:
Therefore, the Court's overruling the defense's objection, and insofar as race, the Court did not inquire as to any of the jurors their particular race. It's quite possible that Mr. Parfait may very well be black or Indian. It's very possible that Mr. James L. Guidry may be black or Indian. The Court has made no special notation, other than the fact, you know, has not inquired because as far as this Court's concerned that doesn't make any difference. But the Court is cognizant of the Supreme Court ruling and the Court has noted that there's already been one black already accepted on this jury and others excused for cause and legitimate reasons. The Court notes and is of the opinion that there's been no pattern of exclusion attempted by the State.
We find no error in the trial court's rulings that defendant failed to establish a prima facie case of purposeful discrimination. Furthermore, those reasons expressed by the prosecutor for exercising peremptory challenges were sufficiently race neutral.[5] Therefore, we conclude the trial court correctly denied defendant's Batson objections.

ASSIGNMENT OF ERROR NUMBER FIVE:
Defendant contends the trial court erred in sustaining the prosecutor's objection to his counsel's cross-examination of Detective Randy Pijor of the Terrebonne Parish Sheriff's Office. When defense counsel asked Pijor if Ronald Williams had been charged with any crime, the prosecutor objected on the basis that defense counsel was attempting to impeach a witness who had not yet testified (Williams). The trial court sustained the objection on the basis that it was speculative and outside of the witness's knowledge.
Defense counsel's question was an obvious attempt to explain the issue of why *511 Ronald Williams came forward to the authorities with information about a murder which had taken place several years earlier. If Williams had been charged with any crime, such information might suggest he was biased and/or motivated to lie against defendant in order to have the charge reduced and/or dismissed. However, as the trial court correctly noted in its ruling, Pijor was not the appropriate witness to question about charges against defendant.
Initially, we note defense counsel did not enter an objection to the trial court's ruling. Furthermore, even if the ruling was erroneous, we find no prejudice to defendant. Defense counsel subsequently cross-examined Ronald Williams at length concerning the reason for his decision to come forward with information about this murder and whether Williams or his girlfriend received any favorable treatment as a result of his cooperation with the district attorney's office.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER NINE:
Defendant contends the trial court erred in restricting his cross-examination of D.L. Mosely regarding the disappearance of his notebook.
At the motion to suppress hearing, Mosely indicated he memorialized defendant's two oral inculpatory statements in a notebook. When defense counsel requested the notebook, Mosely replied he did not have it with him but he could obtain it. At the time, Judge Wilmore Broussard was presiding over the hearing. Judge Broussard ordered Mosely to produce the notebook. Apparently, Mosely did so. However, between the time of the motion to suppress hearing and the trial, Judge Broussard was succeeded by Judge John T. Pettigrew. At trial, during Mosely's cross-examination, defense counsel questioned him regarding the notebook and the two oral inculpatory statements recorded therein. Mosely replied he could not recall the exact language of the statements. Defense counsel then asked if it would help to refresh his memory, and Mosely replied he had not seen the notebook since he gave it to Judge Broussard approximately one year earlier. At that point, Judge Pettigrew recessed the jury and ordered a search for the notebook, but it could not be located. Judge Pettigrew informed the jury the notebook could not be located, and in his opinion it had been lost or destroyed when Judge Broussard left office. Defense counsel did not object to the trial court's explanation to the jury of the circumstances of the missing notebook. In fact, he agreed with the trial court's decision to do so. When defense counsel resumed cross-examination regarding the notebook, Mosely again explained he had surrendered the notebook to Judge Broussard, whereupon the following colloquy occurred.
Q. And when did you, by your testimony, deliver this notebook to Judge Broussard, was it the morning, the afternoon, or whatever of that day, or when did you?
A. It was the afternoon the day he ordered me to produce it, right after lunch.
Q. Right after lunch?
A. That is correct.
Q. Did you at anytime make available to me a copy of that, sir?
A. No. The judge ordered me to bring it to him, I took it to him.
Q. You did not interpret the language of my statements in court in your presence to the effect that it was I, no one else, not the judge or Mr. Walker, who wanted to see the notebook?
A. The judge ordered me to produce the notebook, I brought it to him.
Q. He didn't order you bydid he order you by another order other than what I've just read here to produce to him?
[PROSECUTOR]:
Judge, I'm going to object to that because
THE COURT:
Sustained. I think it's argumentative as to the interpretation and intent of the judge.
[PROSECUTOR]:
That's counsel's interpretation.
[DEFENSE COUNSEL]:
I'll go on, Your Honor.
THE COURT:
Yes.
*512 Apparently, defense counsel was trying to establish why Mosely delivered the notebook to Judge Broussard rather than to him, since he had originally requested to see the notebook at the motion to suppress hearing. However, as Mosely indicated, Judge Broussard ordered Mosely to get the notebook to him (not defense counsel), and Mosely complied. As noted above, defense counsel did not object to the trial court's ruling sustaining the prosecutor's objection. Instead, he went on to a new line of questioning. In the absence of a contemporaneous objection and an offer of proof to the trial court explaining the substance of the evidence being excluded, defendant cannot now complain on appeal that the trial court erred in restricting this line of questioning. La. C.Cr.P. art. 841; La.Code Evid. art. 103A(2).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER TEN:
Defendant contends the trial court erred in restricting his cross-examination of Clyde McGuire.
Clyde McGuire was one of the witnesses to this murder. At the conclusion of his taped statement, he indicated he "woke up in the hospital." Defendant developed a theory that the incident to which the state witnesses testified regarding defendant picking up a hitchhiker occurred in October 1985. The date October 1985 was derived from the fact that one of McGuire's numerous hospitalizations occurred in October 1985. In fact, McGuire was hospitalized a number of times for alcohol abuse and mental problems. At trial, defense counsel attempted to cross-examine McGuire regarding two particular statements that he made while hospitalized on October 4, 1985. In one statement, McGuire boasted of shooting a man in the past. In another statement, he told of beating a man the night before being admitted to the hospital. When defense counsel expressed a desire to use McGuire's hospital records to cross-examine him concerning these statements, the trial court ruled the two statements were irrelevant.
It is well-settled law that the defense should be allowed substantial freedom in cross-examining State witnesses. However, such freedom may be restrained by the trial court when the questions asked are irrelevant or immaterial to the case. State v. Mayes, 325 So.2d 591, 592 (La.1976). Similarly, a defendant's right to present a defense is sanctioned constitutionally, and he can testify to or give evidence on any matter relevant to an issue material in the case. State v. Bennett, 517 So.2d 1115, 1118 (La.App. 1st Cir.1987), writ denied, 523 So.2d 1335 (La. 1988). A "material issue" is one which is "of solid or weighty character, of consequence, or importance" to the case. State v. Ludwig, 423 So.2d 1073, 1078 (La.1982).
Code of Evidence article 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Code of Evidence article 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
In questions of relevancy, much discretion is vested in the trial court. State v. Andrews, 451 So.2d 175, 178 (La.App. 1st Cir.), writ denied, 457 So.2d 17 (La.1984). Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Raymond, 447 So.2d 51, 54 (La.App. 1st Cir.), writ denied, 449 So.2d 1347 (La.1984).
Out of the presence of the jury, the trial court allowed questioning of McGuire regarding the allegation that he shot someone. McGuire admitted he shot a man named Larry Stewart in a barroom fight which occurred sometime before the Sanner murder. Based on this testimony, defense counsel subsequently admitted that McGuire's hospital statement that he shot a man was clearly irrelevant. However, defense counsel argued that the statement that *513 McGuire beat a man the night before he entered the hospital was relevant and admissible, but the trial court disagreed and ruled that such evidence also was irrelevant and inadmissible.
The trial court's rulings were correct. There is no doubt McGuire's shooting of Larry Stewart was completely irrelevant to this prosecution. Furthermore, the statement by McGuire that he beat a man prior to being hospitalized on October 4, 1985, was irrelevant because this murder occurred in July 1984. Accordingly, this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER THIRTEEN:
Defendant contends the trial court erred in limiting the scope of his recross-examination of Ronald Williams.
Code of Evidence article 611(D) provides:
A witness who has been cross-examined is subject to redirect examination as to matters covered on cross-examination and, in the discretion of the court, as to other matters in the case. When the court has allowed a party to bring out new matter on redirect, the other parties shall be provided an opportunity to recross on such matters.
Permitting recross-examination of a witness is within the sound discretion of the trial court; and in the absence of an abuse of that discretion, and resulting prejudice, its ruling will not be disturbed on appeal. State v. Cordier, 297 So.2d 181, 184 (La.1974). When no new issues are raised on redirect examination, recross-examination is not proper. State v. Hawkins, 572 So.2d 108, 115-116 (La.App. 1st Cir.1990).
Defense counsel conducted an extensive cross-examination of Williams. On redirect, the prosecutor asked questions in several specific areas. After several questions on recross-examination, the prosecutor objected that defense counsel's questioning (regarding how Williams recalled the date and time of the murder) did not relate to anything new which had been brought out on redirect examination. The trial court agreed and sustained the prosecutor's objection. After reviewing William's cross-examination, the prosecutor's redirect examination, and defense counsel's recross-examination, we find no error in the trial court's ruling.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER FOURTEEN:
Defendant contends the trial court erred in limiting his cross-examination of Joseph Howard regarding his reluctance to speak with defense counsel. He further contends it erred in sustaining the prosecutor's objection when he was attempting to develop evidence of prosecutorial misconduct, i.e., that the witnesses had been instructed not to talk to the defense.
A witness is free to decide whether to speak with opposing counsel, but that determination is to be made by the witness alone. It is improper for the State to instruct a witness not to speak with the defense. State v. Harris, 367 So.2d 322, 324 (La.1979); State v. Hammler, 312 So.2d 306, 309-310 (La.1975).
During this line of questioning, the prosecutor requested a side bar. The prosecutor noted that, due to an earlier complaint by defense counsel that the witnesses were not speaking to him, Judge Paul Wimbish invoked a court hearing wherein it instructed the witnesses that, if they desired to do so, they could talk to the defense. According to the record, this hearing took place on June 2, 1989, almost two years before trial. Thereafter, the trial court ruled defense counsel could not reopen this line of questioning regarding the alleged refusal of the witnesses to talk to the defense. Considering the fact that these witnesses were instructed in a pretrial hearing that they could, but did not have to, speak with the defense, we find no error in the trial court's ruling preventing defense counsel from further exploration of this issue.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER FIFTEEN:
Defendant contends the trial court erred in limiting defense counsel's cross-examination *514 of Joseph Howard regarding his "characterization of the name of the victim."
During Howard's cross-examination, defense counsel referred to the taped statement regarding the murder given by Howard on December 29, 1988, when the following colloquy occurred:
Q. Now, Detective Usie, you know, talks to you as if you knew the name of the victim, Dale Everett Sanner, correct?
A. No, I didn't know the guy.
Q. But you never did know that, the name of the victim, Dale Everett Sanner, right?
A. No, I didn't know it.
Q. But what I've just read to you, it's as if, you know, you knew his name, right?
[PROSECUTOR]:
Objection, he's putting words in the witness's mouth.
THE COURT:
Sustained.
In his brief to this court, defendant contends this ruling prevented him from cross-examining concerning "Howard's familiarity with the names and players in this investigation indicating further prosecutorial misconduct in the witnesses being coached." Initially, we note defense counsel did not object to the trial court's ruling and, therefore, he is precluded from asserting error on appeal. See La.C.Cr.P. art. 841; La. Code Evid. art. 103 A(2). Furthermore, while leading questions are permissible on cross-examination, Howard twice indicated he did not know the victim's name prior to the question by defense counsel which prompted the prosecutor's objection and the trial court's ruling. Moreover, contrary to defendant's allegation in brief, this ruling did not prevent defense counsel from exploring the possibility that Howard, or any other State witness, had been "coached." A simple examination of Howard's taped statement will explain why it appeared Howard knew the victim's name. At the beginning of the taped statement, Euia Usie of the Terrebonne Parish Sheriff's Office stated the following:
We will be speaking in reference to case number 71136-84, which is a homicide which occurred in 1984 in which a Dale Everett Sanner was the victim. Mr. Howard, we've spoken a little bit before this taped interview, but what we'd like to do now is get your knowledge of what happened that night in reference to the homicide of Mr. Sanner.
After reviewing this introductory portion of the taped statement, it is obvious Usie twice mentioned the victim's name before Howard began to relate the details of the murder.
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NO. SIXTEEN:
Defendant contends the trial court erred in allowing the prosecutor to elicit on cross-examination a demonstration from defendant to show how he swung at the hitchhiker.
The trial court has great discretion in permitting or refusing in-court experiments. Usually, however, simple demonstrations by a witness are permissible. The criteria for withholding permission include considerations arising from the possible disruption of orderly and expeditious proceedings or from a lack of similarity between conditions in the courtroom and the actual conditions sought to be retested. State v. Hampton, 326 So.2d 364, 366 (La.1976); State v. Mays, 315 So.2d 766, 768 (La.1975).
In both his taped statement and his trial testimony, defendant indicated he swung a gun at the hitchhiker, but claimed he did not fire the gun. When the prosecutor asked defendant to demonstrate how he swung the gun, defense counsel objected. The trial court overruled the objection and allowed the demonstration by defendant.
In brief to this court, defendant contends the trial court erred in failing to require the State to establish a foundation of similarity of circumstances prior to the demonstration. Defendant further contends his testimony regarding swinging a gun at a hitchhiker related to the alleged October 1985 incident, but the "jury was incapable of separating the assumption that [he] was talking about July of 1984."
*515 In State v. Robertson, 421 So.2d 843, 845 (La.1982), the supreme court found no error in allowing a demonstration of a gun at the victim's temple. In State v. Mays, 315 So.2d at 768-769, the supreme court found the trial court erred (although it characterized the error as harmless) in not requiring a witness to simulate smoking a cigarette in the same manner he testified he had simulated smoking a marijuana cigarette. The demonstrations proposed in Robertson and Mays are easily characterized as simple demonstrations. Disruption of courtroom proceedings and/or similarity of conditions were not really at issue therein. On the other hand, State v. Hampton, 326 So.2d at 366 involved a victim screaming and State v. Pravata, 522 So.2d 606, 610-612 (La.App. 1st Cir.), writ denied, 531 So.2d 261 (La.1988), involved a demonstration of blood disbursement characteristics. The possibility that courtroom proceedings would be disrupted and/or that the courtroom conditions were significantly different from the actual conditions at the crime scene were issues that were clearly presented in the demonstrations requested in Hampton and Pravata.
We find the prosecutor's request called for a simple demonstration by defendant. There was no danger defendant's demonstration would disrupt courtroom proceedings. The issue of whether the conditions were similar between the courtroom demonstration and the crime scene depended solely upon defendant, since he was asked to give this demonstration of his behavior. Furthermore, the issue of whether the jury believed defendant was reenacting the murder, or an incident involving a hitchhiker which allegedly occurred in October 1985, was a matter related to the weight and credibility to be given evidence and was not a reason for disallowing the demonstration.
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER SEVENTEEN:
Defendant contends the trial court erred in refusing to give an appropriate jury charge on reasonable doubt.
Code of Criminal Procedure article 804(A) provides:
In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to, define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article.
The trial court charged the jury on reasonable doubt as follows:
A person accused of having committed a crime is presumed by law to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. It is the duty of the jury in considering the evidence and in applying to that evidence the law as given by the Court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case, and it is the duty of the jury, if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge.
Defense counsel requested the trial court to include in its jury charge on reasonable doubt definitions of the words "reasonable" *516 and "doubt" taken from Webster's Unabridged Dictionary. The trial court refused, citing article 804. We find the trial court's ruling was correct. The court gave the required statutory charge on reasonable doubt. It was not required to further define reasonable doubt or give any other or further charge than that contained in article 804. State v. Foy, 439 So.2d 433, 437 (La.1983).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. EIGHTEEN:
Defendant contends the trial court erred in denying his motion for post-verdict judgment of acquittal. Specifically, he contends the evidence was insufficient to support the conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
At the time of the offense, Louisiana Revised Statute 14:30.1 provided, in pertinent part:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of... armed robbery ... even though he has no intent to kill or to inflict great bodily harm.
Defendant does not specifically explain how or why the evidence was insufficient. Instead, he asserts a sufficiency analysis is "hampered" because "the trial court sabotaged the theory of the defense, and, thereby, DENIED the introduction into the record of important and substantial evidence tending to prove the innocence of [defendant]...." In support of his assertion that the trial court "sabotaged" his defense, defendant reasserts several assignments of error regarding the court's alleged denial of his right to confrontation. However, we have reviewed the other assignments of error and found them to be meritless. Furthermore, we find the State produced sufficient evidence of defendant's guilt.
At the trial, the State proved defendant shot and killed the victim while attempting to rob him. The victim was unarmed and obviously intoxicated. Defendant apparently believed that offering the victim a ride home presented a perfect opportunity to rob him in a deserted area. The State introduced three inculpatory statements made by defendant, two oral and one tape recorded. Also, several eyewitnesses to the robbery attempt and shooting testified at trial. Defendant's theory that his taped statement referred to an incident involving a different hitchhiker which allegedly occurred in October 1985, more than one year after the July 21, 1984, murder of the victim, was not accepted by the jury.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. The unanimous guilty verdict returned here clearly indicated the jury accepted the testimony of the State's witnesses and rejected the defense theory of the case. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finders's determination of guilt. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
After a careful review of the record, we are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded the State proved beyond a reasonable doubt that defendant was guilty of second degree murder. Accordingly, the trial court did not err in denying *517 defendant's motion for post-verdict judgment of acquittal.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER NINETEEN:
Defendant contends the trial court erred in denying his motion for new trial. Defendant's motion for new trial was based on alleged newly discovered evidence. Defendant asserted the six-page typed transcript of Ronald Williams' statement which he used for trial preparation was missing page five and, therefore, he lacked important information which he could have used to impeach Williams during cross-examination. At the hearing on the motion for a new trial, defense counsel noted that on page five of the transcript, Williams admitted he had on one occasion discussed the shooting incident with Clyde McGuire. Based on this single answer by Williams, defense counsel asserted he could have explored on Williams' cross-examination an allegation that the witnesses rehearsed their stories and/or conspired to lie against defendant.
In a motion for new trial based upon the discovery of new and material evidence, the burden is on defendant to show that the new evidence was not discoverable prior to or during trial and that, if the evidence had been introduced at trial, it probably would have caused the trier of fact to reach a different verdict. La.C.Cr.P. art. 851(3); State v. Spears, 504 So.2d 974, 979 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987). In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Spears, 504 So.2d at 979. Furthermore, the trial court's decision on a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Revere, 572 So.2d 117, 141 (La.App. 1st Cir.1990), writ denied, 581 So.2d 703 (La.1991).
For the reasons which follow, we find no abuse of discretion by the trial court in denying defendant's motion for a new trial. First, we agree with the trial court that the evidence introduced at the motion for new trial (page five of the transcript of Ronald Williams' taped statement) could not be characterized as "newly discovered." Defense counsel conceded that he had received open file discovery before trial. The actual tape recording of Williams' statement was available to the defense long before trial. In fact, on April 10, 1990, approximately one year before trial, a complete six page transcript of Williams' statement was filed into the record in the State's notice of intent to use inculpatory statement and/or confession. Finally, as noted by the trial court, someone reading the bottom of page four and the top of page six would have realized something was missing from that particular transcript of Williams' statement.
Furthermore, even if the evidence could have been characterized as newly discovered, defendant failed to establish it was of such a character that it would probably produce a different verdict at a retrial. Accordingly, we find no error in the trial court's refusal to grant a new trial. This assignment of error is meritless.
For all the above reasons, we affirm defendant's conviction. Defendant's sentence is affirmed as amended (see footnote two).
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; CASE REMANDED WITH ORDER.
NOTES
[1] We note two patent errors in connection with the indictment. First, as noted above, the correct statutory citation for this offense is LSA-R.S. 14:30.1, not LSA-R.S. 14:30(A)(1), as listed in the indictment. Obviously, when the charge was amended, the prosecutor simply failed to amend the statutory citation. Nevertheless, error in the statutory citation shall not be grounds for dismissal of an indictment or for reversal of a conviction if the error did not mislead the defendant to his prejudice. La.C.Cr.P. art. 464; State v. Jordan, 489 So.2d 994, 998 (La.App. 1st Cir. 1986). At no time did the defendant express any doubt as to the nature of this charge, nor did he object to the error. The defendant does not allege, nor do we find, that he was misled or in any way prejudiced by this erroneous statutory citation.

Furthermore, the court minutes do not indicate defendant was re-arraigned after the charge was amended to second degree murder. Nevertheless, defendant does not allege, nor do we find, any prejudice. In any event, failure to re-arraign defendant was waived, since he did not object before trial. La.C.Cr.P. art. 555; State v. Delatte, 504 So.2d 1067, 1068 n. 1 (La.App. 1st Cir.1987).
[2] We note the following patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court, in imposing this sentence, gave the defendant credit for time spent in actual custody prior to sentencing. This allowance of credit is mandatory. La.C.Cr.P. art. 880. Accordingly, we find patent sentencing error and amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of his sentence. See State v. King, 604 So.2d 661, 670 (La.App. 1st Cir. 1992). Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is to be given credit for time served.
[3] In determining whether or not the ruling on the defendant's motion to suppress was correct, an appellate court is not limited to the evidence adduced at the hearing on that motion. Instead, this Court also may consider all pertinent evidence given at the trial of the case. State v. Merchant, 490 So.2d 336, 339 n. 2 (La.App. 1st Cir.), writ denied, 496 So.2d 326 (La. 1986).
[4] It is arguable that counsel's observation was not an objection but simply an attempt to clarify the Batson procedure used by the trial court because when the dialogue was finished, he said:

I know, the Court can't do anything. I don't ask the Court to do anything, Your Honor, just an observation and reply to Mr. Walker.
[5] The reasons offered by the prosecutor to explain his peremptory challenges should be deemed race neutral unless a discriminatory intent was inherent in those reasons. Hernandez v. New York, 500 U.S. 352, 358, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).