572 So.2d 1144 (1990)
STATE of Louisiana
v.
Thomas J. PATTERSON.
No. KA 90 0023.
Court of Appeal of Louisiana, First Circuit.
December 18, 1990.
Writ Denied March 28, 1991.
*1145 Bryan Bush, Dist. Atty. by John Sinquefield, Asst. Dist. Atty., Baton Rouge, for plaintiff/appellee.
Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
Thomas James Patterson was charged by bill of information with armed robbery, a violation of La.R.S. 14:64. He was tried by a jury on April 3-4, 1978, and convicted as charged. Thereafter, on June 6, 1978, the state filed a multiple offender bill of information charging defendant as a Second Felony Habitual Offender. At the conclusion of a September 7, 1978, habitual offender hearing, defendant was adjudged a habitual offender as charged; and he was sentenced to imprisonment at hard labor for a term of thirty-three years, without benefit of parole, probation, or suspension of sentence. On May 16, 1989, pursuant to State v. Counterman, 475 So.2d 336 (La.1985), defendant filed an application for post conviction relief in the district court, requesting that the court grant him an out-of-time appeal; and the record reflects that, on October 30, 1989, following a hearing on the application, the court granted the instant out-of-time appeal. In bringing this appeal, defendant urges six assignments of error, to wit:
1. The trial court erred by denying defendant's motion for a mistrial.

*1146 2. The trial court erred by denying defendant's motion to suppress the victim's in-court identification of him.
3. The trial court erred by ruling that defendant's statement to the police was free and voluntary and admissible into evidence.
4. The trial court erred by overruling defendant's objection to the introduction of certain evidence.
5. The trial court erred by imposing an excessive sentence and failing to follow the sentencing guidelines set forth in La.C.Cr.P. art. 894.1.
6. The trial court erred by adjudging defendant to be a habitual offender.
In brief, defendant expressly abandoned assignment of error number six.
The record reflects that, on the morning of January 13, 1978, Jacqueline Vessel was working alone at Armstrong's Grocery in East Baton Rouge Parish when a man walked up to her and asked her for a pack of cigarettes. After Vessel completed the sale with the man, he walked out of the store.
About five minutes later, the man reentered the store, walking inside with a bag under his arm and his wallet held out. He asked Vessel for a package of Gillette razor blades. She asked him what kind he wanted. She then turned around to get the razor blades; and, when she turned back around and walked up to the store counter, she saw that the man had a gun. Pointing the gun at Vessel, the man told her to open the cash register. She complied. After taking about forty-five dollars in cash and food stamps, the robber immediately left the store.
Vessel exited the store to determine the direction of the robbery's flight. She asked a man (who was apparently coming toward or into the store) the direction of the robber's flight, and he indicated to her that the robber had run down Seventy-Third Avenue and had turned on Goode Street. Vessel ran back to the store and telephoned the police.
Shortly after Vessel reported the crime to the police, officers arrived at the crime scene and interviewed her. Vessel provided the officers with an account of the circumstances of the crime, including a description of the robber and his clothing. She described the robber as a black male with a mustache, a complexion about the same as her own and his hair "kind of sticking out;" and she stated that the perpetrator was wearing light colored trousers and a beige warm-up jacket with dark brown and blue stripes in the back. Vessel also told the police that the gun the robber had used was a sawed-off shotgun and informed them of the robber's direction of flight.
Following the victim's interview, the police began a house-to-house search in the area. After the officers talked to several neighbors, Sgt. Silas M. Geralds of the East Baton Rouge Parish Sheriff's Office went to a residence on Goode Street where he talked to an elderly woman. As a result of that conversation, Geralds proceeded onto Seventy-Fourth Street to defendant's residence.
According to Geralds, defendant, George Patterson (defendant's brother), and Owen Walker (defendant's stepfather) were at defendant's residence. Defendant, who at the time was not wearing a shirt, came out of a back room. He fit the description of the robber. Geralds advised defendant of his constitutional rights. George Patterson brought defendant a shirt and a sweat jacket which fit the description of the jacket worn by the robber. At that time, Geralds again advised defendant of his constitutional rights; and, after defendant put on the shirt, Geralds placed defendant under arrest.
Corporal Paul Frank Maranto, Jr., and Sgt. Paul Littlefield of the East Baton Rouge Parish Sheriff's Office placed defendant in a police unit and transported him back to Armstrong's Grocery to enable the victim to view the suspected perpetrator. When the officers arrived at the store with defendant, Vessel was still at work. At the request of the officers, Vessel came outside to the police unit to view defendant, who was seated on the backseat of the police car. She made an immediate and positive identification of defendant as being *1147 the robber. According to the victim, this in-field identification occurred about thirty minutes after the robbery.
In the meantime, Geralds (who had remained at defendant's residence) obtained a written consent from Owen Walker (the owner of the residence) to search it. During the search, the police recovered a sawed-off .410 gauge shotgun (State Exhibit S-1) and a paper bag (State Exhibit S-2).
Following the in-field identification, defendant was transported to the detectives' office of the East Baton Rouge Parish Sheriff where he was taken into an interview room. Prior to questioning, Geralds again advised defendant of his constitutional rights. Defendant waived his rights, agreed to give Geralds and Littlefield a statement and signed a written waiver of rights and consent to questioning form. During the interview, which lasted approximately thirty minutes, defendant orally confessed to the instant offense.
At trial, the victim made a positive in-court identification of defendant as the perpetrator. She also identified S-1 (the gun) as appearing to be the gun the robber used and S-2 (the paper bag) as similar to or of the same type as the paper bag that the robber had under his arm.

ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant contends that the trial court erred by denying his motion for mistrial which was based upon the state's use of peremptory challenges to exclude black prospective jurors, which resulted in defendant being tried by an all white jury. Defendant argues that the state used peremptory challenges in a discriminatory manner to exclude nine prospective jurors of the black race, of which he is a member. Citing Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), defendant asserts that his claim of racial discrimination in the selection of the jury is governed by the standards enunciated in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We disagree for the reasons which follow.
The record reflects that, immediately after the twelve persons selected to serve on the instant jury had been sworn and seated as jurors, defense counsel made his motion for a mistrial. In support of his claim of racially discriminatory use of the state's peremptory challenges, defense counsel asserted that defendant was being denied a fair trial because the state had used three of its challenges for cause and nine of its peremptory challenges to exclude all twelve of the black prospective jurors examined during voir dire, causing defendant to be tried by an all white jury. The prosecutor responded that defendant's motion was meritless. The prosecutor stated that he did not necessarily agree with the "figures" cited by defense counsel, noting that he did not keep an account of the challenges he had exercised; and he noted that (under the then existing law) he did not have to give reasons for his exercise of peremptory challenges. In any event, the prosecutor categorically denied ever excusing a prospective juror (in the instant case or any other case he had tried in seven years of prosecuting criminal cases) solely because the prospective juror was black; and he elaborated that the reasons he excuses prospective jurors stem from a complex set of criteria he had developed over his seven years of prosecutorial experience as to which (under the then existing law) defense counsel was not privy. Thereupon, the trial court denied the motion for mistrial without giving reasons for the ruling.
In Batson v. Kentucky, the United States Supreme Court reexamined the evidentiary burden placed on a defendant who claims that he has been denied equal protection through the state's exercise of peremptory challenges to exclude members of his race. Formerly, the Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), standard placed the burden on the defendant to prove that the state had systematically excluded blacks from juries over a period of time. The Batson Court rejected the Swain standard as a "crippling burden" and held that a defendant could establish a prima facie case of purposeful discrimination on evidence adduced solely from the state's exercise of peremptory challenges at his trial. *1148 State v. Thompson, 516 So.2d 349, 353 (La.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988). The Batson holding is retroactive and is to be applied to all cases pending on direct review or not yet final at the time Batson was decided. Griffith v. Kentucky, 107 S.Ct. at 716.
Herein, defendant was convicted after trial held on April 3-4, 1978. On September 7, 1978, defendant was adjudged to be a habitual offender and sentenced under La.R.S. 15:529.1. Under La.C.Cr.P. art. 914,[1] to appeal his conviction defendant was required to file a motion for appeal in the trial court within fifteen days after sentence was imposed. Because defendant failed to file such a motion within the time provided in La.C.Cr.P. art. 914, his conviction and sentence became final at the moment that time period expired. See State v. Counterman, 475 So.2d 336, 338 (La. 1985). The circumstance of defendant's filing on May 16, 1989, (more than ten years after his conviction and sentence became final) an application for post conviction relief in the district court requesting an out-of-time appeal which was granted by the court on October 30, 1989, (more than eleven years after the finality of defendant's conviction and sentence) does not in any way alter the fact that the conviction and sentence became final prior to the decision in Batson. Hence, because the instant case had become final before the Batson decision was rendered, our review of the trial court's denial of defendant's motion for mistrial is governed not by the Batson evidentiary standard but, rather, the evidentiary standard set forth in Swain.
Under Swain a defendant was not denied equal protection when the state exercised its peremptory challenges to exclude black persons in a particular case unless there had been a systematic exclusion over a period of time. The defendant had to establish a prima facie showing of such systematic exclusion before the state was required to show the exercise of its peremptory challenges was not discriminatory. State v. Williams, 458 So.2d 1315, 1331 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1317 (1985). Utilizing the applicable Swain standard, we find that defendant made no such prima facie showing in this case. In his motion for mistrial, (without showing that there had been systematic exclusion of blacks over a period of time) defendant contended only that the state used peremptory challenges in this particular case to exclude prospective black jurors.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. TWO:
In this assignment, defendant asserts that the trial court erred by denying his motion to suppress the victim's in-court identification of him. Defendant argues that the victim's out-of-court identification was impermissibly suggestive and unreliable and that the victim's in-court identification was tainted by the out-of-court identification.
The procedure utilized herein, whereby defendant was returned to the scene of the crime for on-the-spot identification by the victim is generally permitted when the accused is apprehended within a short time. State v. Bickham, 404 So.2d 929, 934 (La. 1981). A prompt in-the-field identification under appropriate circumstances promotes accuracy, as well as expediting the release of innocent suspects. State v. Bickham, 404 So.2d at 934.
Herein, the victim's testimony revealed that the in-field identification occurred when the police returned defendant to the scene of the crime about thirty minutes after the commission of the crime. The crime occurred during broad daylight. Defendant entered the store about five minutes before he reentered it and perpetrated the offense. The victim stated that she recognized defendant when he reentered the store and that she thought that he might have forgotten something. When the police returned defendant to the store, *1149 they asked her if she would come out and view the subject in the backseat area of the police unit in which defendant was seated. Before the victim even got to the police car, she recognized defendant's face and identified him. However, the officers asked that she come closer to the car to be certain of the identification. The victim complied with the request and repeated that defendant was the robber. The victim's identification was positive, and she indicated that it was based on her recognition of defendant's face.
Considering all of the evidence revealed in the record and the absence of any intentionally suggestive conduct by the police, we conclude that the in-field identification was the product of the victim's observations of defendant (during the two opportunities she had to view defendant inside the store shortly before the in-field identification) and that the one-on-one confrontation was reliable and not impermissibly suggestive or conducive to irreparable misidentification. Hence, the trial court correctly denied the motion to suppress the in-court identification which was premised on the allegation that the out-of-court identification was impermissibly suggestive and unreliable.
This assignment is meritless.

ASSIGNMENT OF ERROR NO. THREE:
By means of this assignment, defendant contends that the trial court erred by ruling that his confession was freely and voluntarily given and, thus, admissible into evidence.
During the state's presentation of its case-in-chief (at the request of the prosecutor), the jury was removed from the courtroom to permit the state to lay the requisite foundation for the introduction of defendant's confession to Officers Geralds and Littlefield into evidence. Both of these officers testified for the state. Defendant presented his testimony[2] and that of Edward Dalcourt. At the conclusion of the presentation of evidence by the state and the defense in regard to the predicate, the trial court ruled that defendant's confession was freely and voluntarily given and admissible into evidence.
The record reflects that defendant failed to make a contemporaneous objection to the trial court's ruling; and the record does not reflect that defendant filed a motion to suppress his confession.[3] Hence, defendant effectively waived any infirmity in the trial court's ruling. Nevertheless, we elect to consider the merits of defendant's assignment of error and, for the reasons which follow, we find that defendant's confession was properly ruled admissible into evidence.
In his testimony, defendant indicated that three or four officers were present in the room in which he was interrogated, one of whom was black. According to defendant, one of the officers hit him in the head and broke his nose. Defendant also indicated that a white officer hit him with a pistol.
Dalcourt testified that while he was in the downtown jail on January 13, 1978, he observed and talked to defendant. Dalcourt testified defendant "looked like he was pretty hurt", had a "knot" over his right eye and was holding his head. When Dalcourt asked defendant what was wrong, defendant answered that the policemen had "jumped on" him.
According to the testimony of Geralds and Littlefield, they were the only officers present in the interview room during the approximate thirty minute interview which produced defendant's confession. Geralds stated that he advised defendant of his constitutional rights twice at defendant's *1150 residence and a third time before defendant made his confession. The testimony of Geralds and Littlefield further reflects that defendant was explained the constitutional rights set forth in a rights waiver and consent to questioning form which defendant signed before making his confession.
Geralds testified that neither he nor anyone else in his presence struck or beat defendant. Geralds also denied that he had coerced defendant in any way, that he promised defendant anything or that he otherwise induced defendant to make his confession. Geralds stated that, to his knowledge, defendant had no marks on his head when he entered or exited the interview room; and, after the interview, defendant's condition was the same as prior thereto. Consistent with the testimony given by Geralds, Littlefield testified that no one in his presence hit, coerced or abused defendant to obtain defendant's confession. Littlefield elaborated that, if anyone had struck defendant about the head with a gun or had otherwise beaten defendant, he would have known about it. Additionally, in sharp contrast to defendant's claims of police misconduct, Geralds and Littlefield each indicated that defendant's confession was solely the result of his cooperativeness.
The trial court's ruling that defendant's confession was freely and voluntarily made to the police clearly indicates that the trial court believed the officers' testimony rather than that of defendant and his witness. In reviewing a trial court's ruling on admissibility of a confession, the court's conclusions as to the credibility of witnesses are accorded great weight. State v. Messiah, 538 So.2d 175, 178 (La.1988), cert. denied ___ U.S. ___, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990). In this case, the trial court's ruling is supported by the evidence. Hence, there was no abuse of discretion. Cf. State v. Horton, 479 So.2d 528, 531 (La.App. 1st Cir.1985), writ denied, 493 So.2d 1215 (La.1986).
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. FOUR:
By means of this assignment, defendant contends that the trial court erred by overruling his objection to the introduction of State Exhibit S-2, a paper bag. Defendant essentially argues that S-2 was inadmissible on relevancy grounds; however, citing State v. Sweeney, 443 So.2d 522 (La.1983) and State v. Sam, 412 So.2d 1082 (La.1982), in regard to the foundation requirements for admission of demonstrative evidence at trial, defendant combines an argument based on this separate ground for objection with his relevancy argument.
The record reflects that S-2 was seized during the search of defendant's residence and that the exhibit was introduced into evidence over defendant's objection based on the alleged lack of relevancy. A defendant is limited on appeal to grounds for objection articulated at trial. Any additional grounds cannot be raised for the first time on appeal. State v. Washington, 540 So.2d 502, 508 (La.App. 1st Cir.1989). Hence, our review of defendant's assignment is limited to the relevancy ground articulated to the trial court. Cf. State v. Washington.
Relevant evidence is evidence tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent. La.R.S. 15:441.[4] Any evidence, whether direct or circumstantial is relevant if it tends to prove or disprove the existence of a material fact. State v. Williams, 486 So.2d 889, 893 (La.App. 1st Cir.), writ denied, 489 So.2d 915 (La.1986). A trial court has wide discretion in determining the relevancy of evidence, and such a determination will not be overturned on appeal absent a clear abuse of discretion. State v. Huizar, 414 So.2d 741, 748 (La.1982).
At trial, the victim identified S-2 as being "like" the bag the robber had under his arm. On cross-examination, the victim stated that S-2 was the bag used during the robbery. When questioned as to the basis for her identification of the bag, she explained that the identification was based *1151 on the "dirty and wrinkled" condition of the bag.
Clearly, S-2 was relevant to the prosecution's case. Hence, the trial court properly admitted the exhibit into evidence.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. FIVE:
By means of this assignment, defendant asserts that the trial court failed to comply with the sentencing guidelines contained in La.C.Cr.P. art. 894.1 and that defendant was deprived of "the ability to seek meaningful review" of his sentence. Defendant submits that this Court should vacate his sentence and remand this case for resentencing in accordance with law.
In this case, defendant was adjudged a Second Felony Habitual Offender on the basis of his prior 1970 convictions for armed robbery and attempted murder[5] in the Twenty-First Judicial District Court. As a Second Felony Habitual Offender, defendant's penalty exposure for the instant armed robbery was imprisonment at hard labor without benefit of parole, probation or suspension of sentence for a minimum term of thirty-three years and a maximum term of one hundred ninety-eight years. La.R.S. 15:529.1 A(1).[6] Herein, defendant received the mandatory minimum sentence of thirty-three years at hard labor.
Mandatory sentences generally fall within the Legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. See, State v. Prestridge, 399 So.2d 564, 582 (La.1981). On the other hand, the constitutional proscription against cruel and unusual punishment will override a legislatively imposed mandatory minimum sentence if, as applied to a given defendant for a given crime, the punishment is constitutionally excessive. State v. Barberousse, 480 So.2d 273, 280 (La.1985); State v. Harris, 480 So.2d 281, 285 (La.1985).
Herein, the record reflects that there was no presentence investigation; and admittedly, the trial court did not refer to any of the sentencing guidelines set forth in La. C.Cr.P. art. 894.1. Nonetheless, there is sufficient information of record in this case for us to conclude that defendant's sentence is not excessive. The record reflects that during his confession defendant admitted that he used the sawed-off shotgun recovered during the search of his residence to rob the victim and that the gun was loaded at the time he committed the robbery. Although fortunately, no one was physically harmed during this armed robbery, its commission, when considered in light of defendant's prior convictions for armed robbery and attempted murder, unqualifiedly demonstrates his decided propensity to engage in life threatening armed robberies. Under these circumstances, it would serve no purpose in this case to vacate defendant's sentence and remand this case for resentencing and compliance with La.C.Cr.P. art. 894.1. Cf. State v. Harris, 480 So.2d at 285.
This assignment lacks merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] We note that the version of La.C.Cr.P. art. 914 in effect and applicable to this case required that a motion for appeal be filed no later than fifteen days after the judgment or ruling from which the appeal was taken; subsequently, Act 143 of 1982 reduced the maximum delay period from a fifteen day delay period to the five day delay period presently in effect.
[2] Defendant testified only during the hearing held outside the presence of the jury regarding the admissibility of his confession.
[3] We note that La.C.Cr.P. art. 703 F, providing that the failure to file a motion to suppress evidence prevents a defendant from objecting to the admissibility of the evidence at trial on a ground assertable by a motion to suppress, was not in effect at the time of defendant's trial. The law in effect at the time defendant was tried provided (in the second paragraph of La.C.Cr.P. art. 703 as amended by Act 814 of 1975) that a defendant's failure to file a motion to suppress a written confession or inculpatory statement before trial did not prevent the defendant from objecting to the admissibility thereof at the trial.
[4] Although Act 515 of 1988, which enacted the Louisiana Code of Evidence, repealed La.R.S. 15:441 effective January 1, 1989, La.R.S. 15:441 is the law applicable to defendant's trial held on April 3-4, 1978.
[5] We note that at the time this attempted murder was committed our law provided for only three grades of homicide, i.e., murder, manslaughter and negligent homicide; and, at that time, there were no degrees of murder.
[6] Although Act 482 of 1989 increased the minimum sentence in La.R.S. 15:529.1(A)(1) from one-third to one-half the longest term prescribed for a first conviction, the pre-Act 482 version of La.R.S. 15:529.1 A(1) (the law applicable to the enhancement of defendant's sentence for the instant offense) provided as follows:

A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction;
* * * * * *