# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 05-1513

**STATE OF LOUISIANA**

**VERSUS**

**NICHOLAS DEMOND PITREE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 8879-04
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

### ULYSSES GENE THIBODEAUX
### CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.

**CONVICTION AFFIRMED; REMANDED WITH INSTRUCTIONS.**

Ronald Augustin Rossitto
District Attorney - Calcasieu Parish
Carla Sue Sigler
Assistant District Attorney - Calcasieu Parish
P. O. Box 3206
Lake Charles, LA 70602
Telephone: (337) 437-3400
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

Carey J. Ellis, III
Louisiana Appellate Project
707 Julia Street
Rayville, LA 71269
Telephone: (318) 728-2043
COUNSEL FOR:
    Defendant/Appellant - Nicholas Demond Pitree

**Nicholas Demond Pitree**
**Louisiana State Penitentiary**
**Camp C, Jaguar, 3/L/13**
**Angola, LA 70712**

THIBODEAUX, Chief Judge.

The Defendant, Nicholas Pitree, appeals his jury convictions for aggravated rape, La.R.S. 14:42, and second degree kidnapping, La.R.S. 14:44.1. He asserts that the evidence was insufficient to support the convictions, that he was denied effective assistance of counsel, and that the trial court erred in denying his motion to recuse, his motion for a new trial, and his request for self-representation.

Finding no error in any of these contentions, we affirm.

## LAW AND DISCUSSION

### Insufficiency of the Evidence

Defendant challenges the sufficiency of the evidence, pursuant to *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). Defendant's counsel argues that the victim's testimony was not credible. He notes that at trial, she admitted that she had made false allegations of sexual misconduct against her stepfather. Defendant's pro se argument also attacks the victim's credibility and implies that the victim went with him willingly and that they had consensual sex. Defendant argues that the victim had opportunities to escape, to use her cell phone, or otherwise to call for help.

The general analysis for challenges to the sufficiency of trial evidence has been explained by this court:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). *It is the role of the fact finder to weigh the respective credibility of the witnesses, and*

*therefore, the appellate court should not second guess the credibility determinations* of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5, (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371 (emphasis added).

Defendant acknowledges that under the jurisprudence "credibility is not ordinarily reviewed, as it lies within the fact finder's province." He also observes that the testimony of a single witness can support a conviction. *State v. Bailey*, 585 So.2d 1245 (La.App. 2 Cir. 1991).

As previously noted, Defendant was convicted of aggravated rape and second degree kidnapping. Aggravated rape is defined by La.R.S. 14:42, which states, in pertinent part:

A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

. . . .

(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

The basic definition of rape is found in La.R.S. 14:41, which states, in pertinent part:

A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.

2

B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.

Second degree kidnapping is defined by La.R.S. 14:44.1, which states, in pertinent part:

A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:

. . . .

(3) Physically injured or sexually abused; . . . .

B. For purposes of this Section, kidnapping is:

(1) The forcible seizing and carrying of any person from one place to another; . . . .

The victim, B.B.[1], was twelve years old on March 8, 2004. On that date, she left her home at approximately 6:45 a.m. to catch a bus to school. She walked to the bus stop and, as she was waiting, noticed a car circling the block. Suddenly, Defendant stopped his car near the bus stop, got out, forced the victim into the backseat, and drove away. The victim began crying, but Defendant instructed her to lie down and be quiet. At some point, he told her to "shut up." Defendant's initial seizure of the victim was apparently witnessed by Mikey Barnhardt, a teenager who lived in the area and knew B.B. On the morning of the offense, he was walking to his bus stop at the corner of Fall and Kirkman Streets in Lake Charles to go to school. He started to walk to B.B.'s bus stop, which was at Fall and Center Streets, and saw a girl there. He could not see for certain that it was B.B.[2] Barnhardt saw a blue car

_____

[1]The minor victim's initials are used in accordance with La.R.S. 46:1844(W)(1)(a).

[2]The distance between Barnhardt and B.B. was not clearly stated in the testimony; however, reference to a city map indicates the distance was one block. The record indicates a map was on display during Barnhardt's testimony, but the Exhibit Index received by this court states that S-1, an enlarged map of Lake Charles, was retained by the district court clerk's office.

3

pull up, and a black male get out and grab the girl. The car then sped away. He testified the girl did not appear to get into the car voluntarily.

Another witness, Leroy Frank, testified that he lived near the intersection of Fall and Center Streets. On the morning of the offense, he saw the victim at the bus stop. While sitting on his back steps drinking coffee, he noticed that a blue car had stopped at the intersection. He could see only the front of the car from his vantage point. He heard two car doors close and heard the car pull away. About ten minutes later, he noticed a book bag on the sidewalk, and the girl was not there. When the bus passed by and she still had not returned, Frank called the police.

According to the victim's testimony, Defendant pulled into a public park and stopped. He then got into the backseat and told her to disrobe; she did so from the waist down. Then Defendant lowered his pants and inserted his penis into her vagina.

At that point, one of the park's caretakers, Leo Giovanni, approached the area. Defendant pulled up his pants, returned to the front seat, and drove away. The victim testified that Defendant exited the car and briefly spoke to Giovanni, but Giovanni testified he did not remember seeing Defendant get out of the car.

The victim further testified that Defendant drove to another location, where he again parked, got into the back seat, and inserted his penis into her vagina. The victim testified that it hurt. Eventually, he pulled up his pants and drove away from the second site. B.B. testified she followed Defendant's instructions to her, because she was scared. Defendant told the victim that he knew her family and told her his name, although she later learned the name he gave was a pseudonym. According to the victim's testimony, Defendant asked her if she wanted to go home. She responded affirmatively, and he dropped her off at the local mall, near a Sears

department store. The victim then used her cell phone to call her mother and waited until her mother and police arrived.

During the ensuing investigation, the victim submitted to a rape exam, went to the two crime scenes with investigators, and viewed a photographic lineup. She testified that she identified a picture of Defendant in the lineup. Corporal Franklin Fondel of the Lake Charles Police Department, who worked as a detective in the investigation, testified to further details. On the date of the offense, the victim rode with Fondel and another detective and directed them to each of the crime scenes. At the first site, a public park, the detectives found a tampon. Fondel testified B.B. had previously advised the investigators that Defendant had removed the victim's tampon at the park and thrown it out through a car window. Fondel's testimony also corroborated the victim's account of the photographic lineup. Another detective, Takeisha Weldon Robertson, also corroborated the victim's account regarding her identification of Defendant's photo in the lineup.

Fondel explained that he located Defendant and transported him to the detectives division, where Defendant waived his rights and gave a videotaped statement. In response to police questioning, he denied any knowledge of the case. He later gave police a second narrative statement in which he admitted knowing the victim and that she had been in the car with him on the morning of the offense. However, he claimed she entered the vehicle and rode with him voluntarily. Further, he stated the victim wanted to have sex but he did not, and that no sex acts occurred.

The State also adduced testimony from SANE nurse Tammy Bailey.[3] She testified she was unable to complete a "speculum exam" of the victim's vagina,

---

[3]SANE stands for "Sexual Assault Nurse Examiner."

because the area was too tender.[4]  Bailey examined B.B.'s vaginal area with a magnification device called a colposcope, and identified torn tissue.  The nurse also took vaginal swabs.  Patrick Wojtkwiewicz, director of the North Louisiana Crime Lab, testified that testing of the vaginal swabs revealed epithelial material consistent with the victim's DNA profile and sperm material consistent with those of the Defendant.  Wojtkwiewicz testified that "the probability of finding that profile in somebody else is one chance in 22.7 trillion."

As mentioned earlier, B.B. admitted she had made false, and rather detailed, allegations of sexual misconduct against her stepfather.  These allegations led to the stepfather's being jailed before B.B. recanted.  Also, when the victim was in second or third grade, she made various allegations of physical abuse against school personnel, and even her own mother.  However, the victim's account of the rape was corroborated by the evidence adduced from Bailey and Wojtkwiewicz.  Their scientific evidence  supplied  the jury with a reasonable basis to conclude, at the least, that Defendant had forceful vaginal intercourse with B.B.  In regard to the conviction for second degree kidnapping, the victim's testimony that she was seized and taken by force was corroborated in part by the testimony of Mikey Barnhardt.  To the extent that B.B.'s credibility was a factor in the case, it was reasonable for the jury to consider her testimony believable.

Regarding Defendant's pro se observations that the victim made no attempt to escape or call for help, we note that B.B. was twelve years old at the time of the offense and that she was scared.  She testified that she wondered "[i]f I was ever going to see my family again."  The jury reasonably could have concluded that the young victim was simply too frightened to try escaping or calling for help.

---

[4]Bailey explained that a speculum is a device inserted into the vagina to facilitate visual inspection of the cervix and vagina.

As this court has observed:

> It is well-settled that the victim's credibility is a matter for the fact finder to assess, and that the appellate courts will not second-guess such assessments, absent manifest error. *State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94); 649 So.2d 670. In *Bourque*, we did overturn such an assessment, but only where the defendant presented credible alibi testimony in the face of questionable eye-witness testimony. (The only witnesses to the crime were a child and an adult who had consumed a large amount of alcohol before witnessing the incident.) In the present case, the victim was not a weak witness. She positively identified Defendant as her attacker . . . .

*State v. James*, 99-1858, p. 5 (La.App. 3 Cir. 5/3/00), 761 So.2d 125, 129, *writ denied*, 00-1595 (La. 3/23/01), 787 So.2d 1010.

B.B. was a strong witness, and her testimony was bolstered by corroboration from other sources.

Part of Defendant's pro se argument implies that the State had to prove that the sex act was nonconsensual, and failed to do so. However, this is clearly erroneous under the terms of the statute. As the record shows that B.B. was under thirteen years of age at the time of the offense, La.R.S. 14:42(4) mandates that consent or resistance is not an issue in the present case.

For the foregoing reasons, the evidence was sufficient for the jury to render verdicts of guilty to the crimes of aggravated rape and second degree kidnapping.

**Recusal and Self-Representation**

Defendant combines these two assignments, as they both focus on the trial court's denial of his pro se Motion to Recuse on June 16, 2005. Alternatively, he argues the trial court should have allowed him to represent himself.

Recusation of judges is governed by La.Code Crim.P. art. 671, which states, in pertinent part:

A.   In a criminal case a judge of any court, trial or appellate, shall be recused when he:

> (1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;

> . . . .

The procedure for handling such motions is set forth at La.Code Crim.P.

art. 674, which states, in pertinent part:

> A party desiring to recuse a trial judge shall file a written motion therefor assigning the ground for recusation.   The motion shall be filed prior to commencement of the trial . . . .  If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, . . . .

The first circuit has explained the application of these two articles:

[T]he defendant asserts that pursuant to La.Code Crim.P. arts. 673 and 674, Judge Erwin was obligated to either recuse himself or refer the motion to another judge for disposition based solely on the defendant's filing a motion to recuse.  This assertion is erroneous.  The mere filing of a motion to recuse does not compel a judge to act on that motion.  Only when there is a valid ground for recusation in the motion is a judge obliged to act.

> Louisiana Code of Criminal Procedure article 671 A provides that a judge in a criminal case shall be recused if he is "biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial."  Further, Article 674 provides "If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, as provided in Article 675."

> Construing these articles, the supreme court in *State v. Beavers*, 394 So.2d 1218, 1229 (La.1981) stated:

> > Under the jurisprudence interpreting there (sic) articles, a motion for recusal must set forth allegations of fact which state a statutory cause for recusation before the trial judge is required to refer the motion to

another judge. *State v. Collins*, 288 So.2d 602 (La.1974). Where, as here, the motion is based on mere conclusory allegations, the trial court does not err in refusing to refer the motion to another judge for hearing. *State v. Maduell*, 326 So.2d 820 (La.1976).

The defendant's motion to recuse Judge Erwin did not satisfy the statutory provisions regarding the proper recusation of a judge. The defendant set forth no valid ground for recusation in his motion to recuse. He did no more than simply assert that the judge was biased or prejudiced or personally interested in the case without any support for the assertion. In the fourth paragraph of his motion to recuse, the defendant alleged a comment made by Judge Erwin that is found nowhere in the record. A motion to recuse a judge must be based on more than mere general conclusory allegations. *State v. Lukefahr*, 363 So.2d 661, 663 (La.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). *See also State v. Littleton*, 395 So.2d 730, 732 (La.1981); *State v. Gordy*, 380 So.2d 1347, 1353 (La.1980).

The defendant's motion was not sufficient to warrant consideration and, as such, Judge Erwin was not obliged to hear the motion. Furthermore, on appeal, the defendant has failed to demonstrate prejudice or that any substantial rights were affected because of the trial court's failure to rule on his motion. La.Code Crim.P. art. 921; *State v. Gaddis*, 36-661, pp. 11-12 (La.App. 2 Cir. 3/14/03), 839 So.2d 1258, 1267, *writ denied*, 2003-1275 (La.5/14/04), 872 So.2d 519 [, *cert. denied*, 544 U.S. 926, 125 S.Ct. 1649 (2005)].

*State v. Maten*, 04-1718, pp. 10-11 (La.App. 1 Cir. 3/24/05), 899 So.2d 711, 720, *writ denied*, 05-1570 (La. 1/27/06), 922 So.2d 544.

In this case, the trial court held a hearing on the motion on June 16, 2005. The Defendant was upset over an article in a local newspaper. A proffer accepted by the trial court included the relevant article, which stated in part:

Pitree originally became upset with Ware's representation and tried to hire local attorney Hardy Parkerson, but the deal apparently fell through. Two weeks ago Pitree agreed to have Ware return as lead counsel.

Pitree is fortunate to have three highly skilled attorneys looking out for him, Ritchie said Tuesday.

"You're not Michael Jackson," he told Pitree. "And you're not a celebrity."

The judge told Pitree he hoped the defendant was not ignoring his attorneys' advice on some false hope drawn from Monday's acquittal in the pop star's child molestation trial. And if Pitree is convicted and receives more prison time than the plea bargain offered, Ritchie said he would not want the defendant to claim ineffective counsel.

Ultimately, the trial court stated that the issue of the possible exposure of the jurors to the newspaper article did not form a basis for recusal. However, Defendant also argued the comments related in the newspaper article indicated the judge was biased; this is the sole argument he presents in his pro se brief.

The comments in the newspaper article and acknowledged by the trial judge at the recusation hearing do not facially reflect bias on the judge's part. The trial judge explained his comments in the following colloquy:

**THE COURT:**

Okay. Your attorneys have looked at that, Mr. Pitree, and have -- and have decided not to adopt your motion, okay. And I'm not going to allow this -- anymore time to be, you know, wasted. We're Thursday morning here, just now about to start this trial, and you've got three very good lawyers representing you, and they have read your motion, they have opted not to adopt your motion, okay. That ought to tell you something. I know you've been ignoring their advice a lot of the times, that's why that whole comment got in the paper the other day. Of course, that's your right to do that, okay, but I -- that comment that I made the other day was just -- just to -- I guess just to make you aware of -- oh, well, actually, -- well, anyway --

**MRS. KILLINGSWORTH [Prosecutor]:**

Reality, maybe?

**THE COURT:**

Well, I'm just -- I just wanted you just to -- that was just a comment just to kind of make you think for sure

10

about what you were doing, okay. But your attorneys have opted not to adopt that and I'm not going to hear anymore about it, and we need to -- we need to proceed. Anything else, Mr. Ware?

The judge's explanation of his comments is a reasonable characterization of them. Thus, as in *Maten*, he was not required to refer the matter to another judge for a hearing.

Assuming, arguendo, the motion should have been referred to another judge, we conclude that it fails on the merits. Our brethren on the fifth circuit explained:

> On March 19, 2003, defendant filed a motion to recuse Judge Becnel because she stated that the evidence at the preliminary exam supported a more serious charge, which resulted in the State amending the charge against defendant to a more serious charge. Defendant contended Judge Becnel's statement showed bias and substantially prejudiced him.
>
> . . . .
>
> Judge Snowdy denied the motion to recuse finding that Judge Becnel's comments did not remove her from her role as a neutral arbiter. Judge Snowdy explained that the jury was the ultimate trier of fact. He found that her comments were simply an expression of her reaction to the facts she had just heard and that the amended charge was not necessarily related to Judge Becnel's comments. Judge Snowdy noted that the State could have increased or lessened the charge against defendant based on the facts revealed at the preliminary exam.
>
> LSA-C.Cr.P. art. 671 outlines the grounds for recusing a judge. It states that a judge shall be recused when he "[i]s biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial[.]" LSA-C.Cr.P. art. 671(A)(1). A trial judge is presumed to be impartial. The burden is on the defendant to prove otherwise. *State v. Howard*, 01-5 (La.App. 5 Cir. 4/24/01), 786 So.2d 174, 183.
>
> In *State v. Dooley*, 38,763 (La.App. 2 Cir. 9/22/04), 882 So.2d 731 [, *writ denied*, 04-2645 (La. 2/18/05), 896 So.2d 30], the Second Circuit upheld the denial of a motion

11

to recuse the trial judge where the defendant claimed the trial judge's comments during the preliminary exam were biased. In *Dooley*, defendant sought a preliminary exam hearing after her arrest and before the grand jury issued an indictment. After the hearing, defendant requested she be released because of lack of probable cause. The trial judge denied defendant's request and stated the evidence presented established that she was "'at least guilty of some form of homicide.'" *Id*. at 745. Defendant filed a motion to recuse the trial judge based on his comment which was denied by the trial judge without referring the matter to another judge and without a hearing. The Second Circuit found the trial judge's comment at the preliminary exam was merely another way of saying there was probable cause to charge her with some form of homicide. The court found defendant failed to show how the trial court's statement represented impermissible bias.

The Louisiana Supreme Court has stated that while trial judges "have a duty to remain impartial and neutral, judges are not merely umpires or moderators." *State v. Baldwin*, 388 So.2d 679, 686 (La.1980). Rather, a judge "'is charged to see that the law is properly administered, and it is a duty which he can not discharge by remaining inert.'" *Id*. at 687-688 (*quoting United States v. Marzano*, 149 F.2d 923, 925 (2nd Cir.1945)). In *Baldwin*, defendant filed a motion to recuse the trial judge on the basis that he was prejudiced because the judge made comments which suggested to the prosecution objections which could be made. The motion was denied and upheld on appeal.

The purpose of a preliminary exam is to determine whether there is probable cause to charge a defendant with a crime and hold him over for trial. LSA-C.Cr.P. art. 296; *State v. Gordon*, 00-1013 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 148, *writs denied*, 02-0362 (La.12/19/02), 833 So.2d 336, and 02-0209 (La. 2/14/03), 836 So.2d 134. In the present case, Judge Becnel's comments at the conclusion of the preliminary exam were equivalent to saying there was probable cause to hold defendant on some sex offense. In this instance, the more appropriate sex offense was more serious than the one with which defendant was originally charged. Judge Becnel testified that she had no bias against defendant. Her testimony shows that her only concern was the proper application of the law. Based on the foregoing, we find that Judge Becnel's comments after the preliminary exam hearing did not demonstrate partiality or bias against defendant.

*State v. Strickland*, 04-843, pp. 10-12 (La.App. 5 Cir. 3/1/05), 900 So.2d 885, 892-94, *writ denied*, 05-820 (La. 6/17/05), 904 So.2d 683.

The court's comments in the instant case were milder than those at issue in *Strickland*, and do not show bias on the judge's part. Thus, the discussion in *Strickland* further strengthens our conclusion that the trial court in this case did not err in not referring the motion to another judge for a hearing.

However, some of the trial judge's comments at the June 16 hearing suggest an outright refusal to rule upon the bias issue, because Defendant was represented by counsel. Such a refusal to rule upon a pro se motion may be erroneous, pursuant to *State v. Melon*, 95-2209 (La. 9/22/95), 660 So.2d 466. However, as our analysis indicates that the bias claim was without merit, Defendant was not prejudiced by the trial court's failure to rule on the issue.

Defendant also complains that the trial court denied his motion for new trial, and refused to rule on his supplemental motion for new trial. In the court below, Defendant's arguments regarding the motions focused on the issue of possible jury taint; however, his current argument focuses upon allegations the trial judge was biased. Thus, this portion of his argument fails for reasons discussed in relation to his motion to recuse.

Defendant also argues the trial court erred by refusing to allow him to dismiss his three attorneys and represent himself at trial. The following colloquy occurred:

**THE COURT:**

Well, I'm just -- I just wanted you just to -- that was just a comment just to kind of make you think for sure about what you were doing, okay. But your attorneys have opted not to adopt that and I'm not going to hear anymore about it, and we need to -- we need to proceed. Anything else, Mr. Ware?

**MR. PITREE:**

Your Honor, at this time I'm going to waive Mr. Ware, Mr. White and Mr. St. Dizier's representation and I'm going to ask the Court to move that I proceed pro se.

**THE COURT:**

No. We've been down this road before and I'm not going to allow the process to be manipulated by you, Mr. Pitree. You had your opportunity to do that and you asked to rescind that. As a matter of fact, even when you were representing yourself, you -- you requested Mr. Ware, and with his consent, he actually represented you during those prior proceedings, except for those times when you wanted to stand and address the Court, okay. You knew what was coming, you knew this trial was coming, you asked Mr. Ware to -- if he could possibly come back in and be re-enrolled as your attorney, and -- and I granted that request --

**MR. PITREE:**

Yes, sir.

**THE COURT:**

--on Monday.

**MR. PITREE:**

Yes, sir.

**THE COURT:**

And at this point it just appears to me that you're just trying to manipulate the system, you've got advice that -- that your attorneys don't believe that your motion has any merit, but because you insist on going forward with it, you're -- now you're wanting to represent yourself again. We're not going to do that, okay. You've had your chance and we're going to go forward with this trial. I'm not relieving your counsel at this point.

In making its ultimate ruling on the issue, the court stated:

Everything that you've said just supported what I was saying and what I'm about to do, okay. You don't have a real desire for self-representation, it's not an unequivocal desire for self-representation. You just want to get out

14

your argument on that motion to recuse, and so -- and I'm not -- and let me just cite this case of -- 3rd Circuit case, **State of Louisiana versus Tyronne [sic] Hypolite,** docket number -- I mean, -- well, there's not even a cite. There's a Lexis cite, 2005, Louisiana Appellate, Lexis, 1472, it's a June 1st, 2005 case, that's why it doesn't have a docket number. It's a 3rd Circuit case that basically says your right is not absolute and there's some similarities in the facts there and in this case, but I think we have a stronger case here than what was in here for the -- a stronger set of facts in our -- in your case than we did here -- than they had in this **Hypolite** case for denying your -- or denying your right to self-representation, and I guess in fact concluding that you have waived your right to self-representation based on the history of what's transpired in this case and based on your reasons for requesting it at this time,. . . .

On appeal, the State cites *State v. Hypolite*, 04-1658 (La.App. 3 Cir. 6/01/05), 903 So.2d 1275, which explained:

> In the present case, the "*Faretta* Hearing"[5] was not held until the State was about to call its final witness in its case-in-chief. In proceedings conducted outside the presence of the jury, the court questioned Hypolite with regard to his ability to represent himself. Upon being asked by the court whether he understood that he did not know how to try a case, Hypolite responded that it "shouldn't be too hard." Hypolite stated that he felt he could represent himself, in spite of being informed of the complexities of trying cases. He asserted that he needed to represent himself because his lawyers would not ask the questions he wanted asked. Hypolite opined that all it would take to represent himself would be common sense. The court denied the request . . . .
>
> . . . .
>
> The State cites *State v. Bridgewater*, 00-1529, pp. 19-20 (La. 1/15/02), 823 So.2d 877, 895, *modified on rehearing*, 00-1529 (La. 6/21/02), 823 So.2d at 909, *cert. denied*, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003), which explained that:
>
> > Substantively, defendant's request to represent himself was not an unequivocal one;

---

[5]*Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525 (1975), focused on the right to self-representation.

rather, it was an obfuscated request to substitute appointed counsel because of his disagreement with current counsel's choice of trial strategy. Addressing a similar request, the federal court in [*U.S. v.*] *Frazier-El* [204 F.3d 553 (4th Cir.), *cert. denied*, 531 U.S. 994, 121 S.Ct. 487, 148 L.Ed.2d 459 (2000)], *supra*, reasoned:

> A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel. The circumstances surrounding Frazier-El's purported waiver of his right to counsel and the assertion of his right to proceed without counsel in this case suggest more a manipulation of the system than an unequivocal desire to invoke his right of self-representation. Taking the record as a whole, we are satisfied that the district court was justified, when confronted with Frazier-El's vacillation between his request for substitute counsel and his request for self-representation, in insisting that Frazier-El proceed with appointed counsel.

204 F.3d at 560 (internal citations omitted).

Although the defendant argues that this Court's decision in *State v. Santos*, 99-1897 (La. 9/15/00), 770 So.2d 319, is controlling, that case is easily distinguishable. In *Santos*, *supra*, the defendant made an unequivocal request to discharge his court-appointed counsel and to represent himself, explaining that he feared "'the Indigent Defender Board is working with the police of St. Bernard Parish to keep me here.'" 99-1897 at p. 3, 770 So.2d at 321. Unlike the defendant in *Santos* who was convinced that no public defender could serve his interests, in this case defendant specifically stated that it was current counsel with whom he was dissatisfied. Two other factors we relied upon in *Santos* were that the defendant (i) unequivocally asserted his right to represent himself, and (ii) made that request "under circumstances which

precluded a finding that he was simply engaged in dilatory tactics." 99-1897 at p. 4, 770 So.2d at 322. Neither factor is present here.

First, defendant's request was not clear and unequivocal; rather, defendant's request was, like in *Frazier-El*, *supra*, "a manipulative effort to present particular arguments" and vacillated between self-representation and representation by counsel. Second, given that defendant raised similar arguments before (a point discussed below) and that he sought a continuance on the eve of trial, this clearly could be characterized as a "dilatory tactic."

. . . .

*Bridgewater* also demonstrates an independent basis for rejecting Hypolite's claims. That basis, the dilatory and manipulative nature of the motion, found in both *Bridgewater* and this case, distinguishes both of them from *Santos*.

. . . .

[U]nder *Bridgewater's* reasoning, a defendant's attempt to use the right to self-representation as a tool of delay or manipulation puts him outside the protections afforded to genuine attempts to assert the right. This is a long-standing principle in Louisiana jurisprudence. *See, e.g., State v. Hegwood*, 345 So.2d 1179 (La.1977).

As noted earlier, Hypolite did not move to represent himself until the State's case-in-chief was nearly complete. Therefore, the timing of the request indicates that it was merely a delay tactic. Much like the defendant in *Bridgewater*, Hypolite made earlier attempts to obtain *substitute* counsel, apparently due to disagreements regarding trial strategy. However, he did not clearly ask to represent himself until the State was about to call its last witness in its case-in-chief. As a result, his request appears to be "a manipulative effort to present particular arguments" rather than "a sincere desire to dispense with the benefits of counsel." *Bridgewater*, 823 So.2d 877, 895, *quoting U.S. v. Frazier-El*, 204 F.3d 553, 560 (4th Cir.), *cert. denied*, 531 U.S. 994, 121 S.Ct. 487, 148 L.Ed.2d 459 (2000). Therefore, we find no error in the trial court's refusal to allow Hypolite to represent himself.

*Id*. at 1280-83.

In the present case, Defendant vacillated on the issue of whether he desired the assistance of counsel. The minutes show that Ron Ware represented him at his arraignment on June 14, 2004, and also at a bond reduction hearing on June 16, 2004. On October 8, 2004, Ware again appeared in open court with Defendant, who asked to represent himself. The court denied the request, and Defendant objected. On December 10, 2004, the Defendant argued a "Motion to Recuse the Public Defender's Office," which the court granted, although it appointed Ware to assist him. On February 2, 2005, Ware presented a motion to continue on Defendant's behalf; the minutes of that date do not show that Defendant was present. However, the minutes for February 4 and March 2 clearly state that Defendant was lead counsel and Ware was his co-counsel.

On May 4, Defendant advised the court that he was attempting to secure representation by a private attorney. Ware asked to be relieved as co-counsel, and the court granted the request. Ware advised the court that he would voluntarily assist Defendant for the remainder of that hearing. The court allowed Ware to sit with Defendant, but advised the attorney that he would not be recognized as co-counsel. A *Daubert* hearing was taken up, apparently in regard to DNA evidence. At that time another attorney, Richard White, voluntarily conducted cross-examination on Defendant's behalf. On the same date, Defendant filed an objection to a discussion that Ware and an assistant district attorney allegedly had outside Defendant's presence. It is not immediately clear when that discussion is supposed to have occurred, but it apparently occurred during a hearing, as the court advised Defendant he would receive a transcript. On the same date, a motion to change venue was taken up. Ware asked to defer it to voir dire, but Defendant asked that the motion be taken up, and the court so ruled. However, Defendant agreed to Ware's arguing the motion on his behalf.

18

On May 6, 2005, Ware again voluntarily appeared to assist Defendant. Ware made some arguments regarding an admissibility issue, and Defendant adopted those arguments. At the close of the hearing, Defendant again advised the court that private counsel would be taking over his case.

On June 13, the trial court's colloquy with the Defendant indicated that the Defendant desired the renewed representation of Ron Ware and Charles St. Dizier of the Public Defender's Office.

The next colloquy relevant to this issue occurred at the recusal hearing quoted earlier in this discussion. The record demonstrates that Defendant vacillated on the issue of self-representation. The day before jury selection began, he willingly accepted the reappointment of Ware and accepted the appointment of two other counsel also. Two days later, just as the jury was to begin hearing evidence, he sought to relieve counsel due to the disagreement over the recusal motion.

Viewed in light of the overall history of Defendant's maneuvers regarding the issue of self-representation, we conclude that this portion of Defendant's argument lacks merit.

### Ineffective Assistance of Counsel

In his final pro se assignment, Defendant argues he received ineffective assistance of counsel at trial. The analysis for such claims is well-settled:

> In *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, (1984)], the United States Supreme Court set out a two-prong test for proving ineffective assistance of counsel. *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Under *Strickland*, for a defendant to establish that he received ineffective assistance of counsel, he must show (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88, 694, 104 S.Ct. 2052.

*State v. Montalban*, 00-2739, p. 5 (La. 2/26/02), 810 So.2d 1106, 1110, *cert. denied*, 537 U.S. 887, 123 S.Ct. 132 (La.2002).

In his pro se argument, Defendant claims his trial counsel were ineffective for failing to object to the State's amendment of the indictment. On June 14, 2005, the State amended the bill to add a basis for the aggravated rape charge. The original bill charged him under La.R.S. 14:42(A)(1), along with the second degree kidnapping charge. The amendment added La.R.S. 14:42(A)(4) to the indictment. We note an analogous case from the fifth circuit:

> In his second assignment of error, the defendant contends the trial court erred by allowing the Bill of Indictment to be amended the day of trial by excluding the Grand Jury's reference to simple possession of heroin. The Bill of Indictment in this case originally charged the defendant with "possession with intent to distribute heroin," and cited as the governing statute "R.S. 40:966A & C." The body of the indictment alleges that the defendant "did knowingly and intentionally possess with intent to distribute a controlled dangerous substance to wit: Heroin . . ."

> Prior to the commencement of trial, over the defendant's objection, the trial court allowed the state to amend the bill to eliminate the reference to subsection "C" of the statute, which covers simple possession of heroin.

> Louisiana Code of Criminal Procedure article 464 provides:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

> The district attorney has the power and authority to amend grand jury indictments, as to both form and substance. *State v. Neslo*, 433 So.2d 73 (La.1983). Unless prejudice to the defendant results, the state may correct an erroneous statutory citation in the indictment. *State v. Williams*, 392 So.2d 619 (La.1980).

In this case the Bill of Indictment states, in two separate places, that the charge is "possession of heroin with intent to distribute." Based on this wording, we find the intent of the grand jury was to charge the defendant only under subsection "A" of the statute, which pertains to distribution and the state's amendment merely corrected a technical error.

*State v. Hayes*, 98-485, p. 9 (La.App. 5 Cir. 11/25/98), 726 So.2d 39, 43, *writ denied*, 99-55 (La. 5/7/99), 741 So.2d 29.

This court has also taken note of the district attorney's authority to amend indictments:

The district attorney has complete authority to amend indictments, both as to form and substance, at any time before trial. La.C.Cr.P. art. 487; *State v. Guin*, 444 So.2d 625 (La.App. 3rd Cir. 1983). The amendments in the instant case were made one week before trial and on the morning of trial prior to jury selection, respectively. Therefore, whether the amendments were substantive or formal, they were proper.

Upon defense motion and a showing that the amendment has prejudiced the accused in his defense on the merits, the trial judge shall grant a continuance. La.C.Cr.P. art. 489. The purpose behind the continuance is to protect the accused against prejudicial surprise which could result from an amendment. *State v. Brown*, 338 So.2d 686 (La.1976). The trial court has broad discretion in deciding whether to grant a continuance and his ruling will not be disturbed unless he arbitrarily and unreasonably abuses that discretion. *State v. Davis*, 385 So.2d 193 (La.1980).

*State v. Jones*, 544 So.2d 1209, 1214 (La.App. 3 Cir. 1989).

The supreme court has explained:

The indictment as originally drawn charged defendant with the murder of both victims. The amendment merely clarified that there were two counts, more as a matter of form than substance. The record shows that no prejudice was suffered by the defense as is evidenced by the statement made by defense counsel prior to the district attorney's motion to amend the indictment. Defense counsel stated, "Now, Mr. Sanders is charged with two counts of first degree murder . . ." This indicates that both parties believed the defendant had been charged with two

21

counts of first degree murder and that the amending of the indictment was a mere formality.

Under LSA-C.Cr.P. art. 487, the court may at any time cause the indictment to be amended in respect to a formal defect and may order an indictment amended with respect to a defect of substance at any time before the trial begins. Such amendments may include adding a charge or a count to an indictment. *State v. Lovett*, 359 So.2d 163 (La.1978); *State v. Sheppard*, 350 So.2d 615 (La.1977). Trial does not begin for trial purposes until "the first prospective juror is called for examination." LSA-C.Cr.P. art. 761; *Lovett*, 359 So.2d at 16[6]. Defendant's prosecution began with a grand jury indictment, and in conformity with arts. 487, 489 and 761, the state amended the indictment before trial. The district judge found that the amendment did not surprise the defense and made "no difference whatsoever in the preparation or the defense in any way, shape or form." We find this assignment of error is without merit.

*State v. Sanders*, 93-01, p. 13 (La. 11/30/94), 648 So.2d 1272, 1283, *cert. denied*, 517 U.S. 1246, 116 S.Ct. 2504 (1996) (footnote omitted).

Under the jurisprudence cited above, it is clear the State had the authority to amend the indictment as it did. Defendant's available remedy was to request a continuance. However, to obtain such relief, he would have needed to show that the amendment improperly prejudiced his case. We believe he would have been unable to do so, as the record indicates he had notice of the nature of the State's case before the amendment. The original indictment stated that Defendant was charged with the "aggravated rape of a female juvenile, DOB 1/21/92." Also, as the State points out in its brief, the Bill of Particulars clearly stated that Defendant was being charged with having vaginal intercourse with a twelve-year-old girl and specifically cited both La.R.S. 14:42(A)(1) and (A)(4). The State also argues that on discovery, it provided the victim's hospital admission sheet, which showed the victim was twelve on the offense date.

Thus, as the State suggests, Defendant had notice of the factual basis of the aggravated rape charge, and thus would not have been able to demonstrate sufficient prejudice to obtain a continuance. Likewise, he fails to demonstrate, or even argue, any specific prejudice, for purposes of the *Strickland* test.

For the reasons discussed, this assignment lacks merit.

## ERROR PATENT

The trial court failed to inform the Defendant of the prescriptive period for filing post-conviction relief. Such notice is required by La.Code Crim.P. art. 930.8(C). Thus, the trial court is directed to inform the Defendant of the prescriptive period by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion. Additionally, the trial court is instructed to file written proof of the notice in the record of these proceedings. *State v. Roe,* 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06) ___ So.2d ___.

## CONCLUSION

Defendant's convictions and sentences are affirmed. However, the case is remanded, and the trial court is instructed to inform the Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending him appropriate written notice within ten days of the rendition of this opinion. Additionally, the trial court is instructed to file written proof of the notice in the record of these proceedings.

**CONVICTION AFFIRMED; REMANDED WITH INSTRUCTIONS.**